Burns vs. Commonwealth.

3mo 13
e113 801

CASE 6—INDICTMENT—JUNE 22.

# Burns vs. Commonwealth.

APPEAL FROM HARRISON CIRCUIT COURT.

An indictment for malicious shooting with intent to kill, charged that the defendant, "with a certain pistol which he then and there had and held, feloniously and maliciously shot and wounded one John Bailey, then and there being, with the intent then and there to kill and murder the said John Bailey;" but failed to allege that the person wounded "*did not die thereby*," and that the pistol was "loaded with a leaden bullet or other hard substance." *Held*—That the indictment is sufficient either upon demurrer or upon motion in arrest of judgment.

Where the bill of exceptions in a criminal case fails to show that the defendant objected to the instructions asked by the Commonwealth, any error which may have

been committed by the Circuit Court in giving the instructions complained of must be deemed to have been waived, because not excepted to at the time, and cannot constitute a valid ground of reversal of the judgment of conviction.

W. W. TRIMBLE, for appellant, cited *Revised Statutes, article* 6, *sec.* 2, *page* 251 ; *notes to Stanton's Code of Practice, page* 327 .

A. J. JAMES, Attorney General, for Commonwealth, cited *Crim. Code, secs.* 129, 137.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

This is an appeal from a judgment of conviction against the appellant, upon an indictment for malicious shooting with intent to kill.

Two grounds of reversal are relied upon by the appellant :

*First.* That the court erred in overruling his motion in arrest of judgment, and

*Secondly.* In the instructions given at the instance of the Commonwealth.

1. The only enquiry presented by the first point is, whether "the facts stated in the indictment constitute a public offense within the jurisdiction of the court." (*Crim. Code, sec.* 271.)

The clause of the statute which defines the offense of *malicious shooting*, is in these words : "If any person shall willfully and maliciously shoot at and wound another, with an intention to kill him, so that he does not die thereby, with a gun or other instrument loaded with a leaden bullet, or other hard substance," he shall be confined in the penitentiary, &c.

The charge as set out in the indictment is, that the defendant, "with a certain pistol, which he then and there had and held, feloniously and maliciously shot and wounded one John Bailey, then and there being, with the intent then and there to kill and murder the said John Bailey."

It is contended that this indictment is defective in two particulars : *First*, in failing to allege that the person wounded "*did not die thereby;*" and *secondly* in failing to allege that the pistol was "loaded with a leaden bullet or other hard substance."

The common law rule of pleading in criminal cases was that when the words of a statute were descriptive of the offense, the indictment should follow the language, and expressly charge the offense as described, or it would be defective. But the utmost strictness of this rule never required anything more than that the defendant should be brought within the *material* words of the statute. But in this, and in many other respects, our present system of criminal practice has dispensed with much of the exactness and formality which were required at the common law.

"The words used in a statute to define an offense need not be strictly pursued in an indictment, but other words conveying the same meaning may be used." (*Crim. Code, sec.* 137.)

And by *section* 128, an indictment will be deemed sufficient "if it can be understood therefrom that the act or omission, charged as the offense, is stated with such a degree of certainty as to enable the court to pronounce judgment on conviction, according to the right of the case." "It must contain a statement of the acts constituting the offense in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended." (*Sec.* 121.)

"No indictment is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by any defect which does not tend to prejudice the substantial rights of the defendant, on the merits." (*Sec.* 129.)

Such are some of the general requisites of an indictment, prescribed by the Criminal Code. In these, and in other similar provisions, the legislature have very clearly manifested an intention to dispense with the rigid adherence, heretofore required, to mere technical forms, which instead of protecting the substantial rights of the accused most generally operated to defeat the real ends of justice.

Tested by these rules, the sufficiency of the indictment under consideration, either upon demurrer or upon the motion in arrest of judgment, is clearly maintainable. It undoubtedly charges "a public offense within the jurisdiction of the court," and upon that ground alone the court below properly overruled the motion in arrest of judgment. But we might go fur-

ther, and show that it sufficiently set out the material facts necessary to constitute the offense defined by the statute. The gravamen of the offense consists in the maliciously shoot ing at and wounding of another, with an intention to kill him, with a gun or other instrument. These essential facts are fully charged in the indictment. The words of the statute omitted to be averred, are immaterial so far as the definition of the offense is concerned. The words "so that he did not die thereby" serve only to distinguish the offense of *malicious shooting* from *murder*, and the omission of those words, so far from authorizing the deduction that the offense charged had not been committed, could authorize no other legal inference than that the accused had been guilty of the crime of murder, which, being the greater offense, of course includes the minor. The whole argument upon this point amounts to this, that the indictment may be so construed as to charge the defendant with the crime of murder, and that, therefore, it cannot be considered as sufficiently charging the offense of maliciously shooting and wounding with the intent to kill. Does such supposed defect, if it were conceded to be one, "tend to prejudice the substantial rights of the accused on the merits," so as to affect the judgment of conviction, and to justify this court in reversing it on that ground alone?

2. Upon the second point, involving the questions arising upon the instructions given by the court, a very grave preliminary inquiry is presented by the record.

The bill of exceptions fails to show that the defendant objected at any time to any of the instructions asked by the Commonwealth, or that he excepted to any decision of the court relating to them. Can he rely upon any supposed error committed by the court below, in giving those instructions, as a ground of reversal, in this court?

The Criminal Code allows either party, upon the trial of criminal or penal prosecutions to except to any decision of the court, subject to certain restrictions, and provides that "the exception shall be shown upon the record, by a bill of exceptions, prepared, settled, and signed, as provided in the Code of Practice in civil cases." (*Sections 275, 276, and 277.*)

The provisions of the Civil Code, here referred to, are to be found in *sections* 363 *to* 369 inclusive. By *section* 364, "the party objecting to a decision of the court must except at the time the decision is made;" and *section* 369 declares that a new trial may be granted for error of law occuring at the trial, and excepted to by the party making the application.

In the case of *Kennedy vs. Cunningham*, (*decided at the Winter Term*, 1859, 2 *Met.* 538,) this court, in commenting on the provisions of the Code just referred to say: "one of the leading characteristics of the provisions of the Civil Code is the duty which they impose on the parties to the action, to except to every proceeding in the cause, and every decision of the court made during its trial, that is deemed to be objectionable by either party. The policy of this requisition is obvious. Matters which are regarded as of little importance at the time, and are, for that reason, allowed to pass unnoticed, are thus finally disposed of, and cannot be afterwards relied upon as erroneous. Each party, by being apprised that the opposite party objects to some part of the proceedings, is thus put upon his guard, and has an opportunity afforded him of correcting the error, if one has been committed, or of avoiding it, if about to be committed. Instructions may be asked which, if objected to, would not be insisted on, or if insisted upon, would not be given by the court, but which might be given if no objection was made to them. For this reason the error in the instruction is deemed to be waived, unless the instruction be objected to at the time it is given."

The same point was decided in the subsequent case of *Letton, &c. vs. Young, &c.*, (*Winter Term*, 1859, 2 *Met.* 558.)

That these provisions of the Civil Code, as well as the principles and policy on which they are founded, as set forth in the foregoing extract, apply to proceedings in criminal and penal cases, cannot be questioned. The sections of the Criminal Code, above referred to, expressly so provide, and in the case of *Adwell vs. Commonwealth*, it was decided that this court had no power to reverse a judgment of conviction unless for errors

of the court properly presented by exceptions taken at the time and in the mode prescribed by the Civil Code.

The conclusion follows necessarily, that any error which may have been committed by the court below in giving the instructions complained of, must be deemed to have been waived, because not excepted to at the time, and cannot constitute a valid ground of reversal. And it becomes unnecessary, therefore, to inquire whether any such error was committed or not.

The judgment is *affirmed*.