THE KAW LIFE ASSOCIATION *et al.* v. JENNIE LEMKE.

INSURANCE — *Mutual Life Associations — Bond to the State.* The bond required to be given under the provisions of chapter 131 of the Laws of 1885, "An act providing for the organization and control of mutual life associations in this state," is an official bond, and the obligation of the same does not extend beyond the official year for which it was given, or the term of the officers who give it.

*Motion for Rehearing.*

THE facts are stated in *Life Association v. Lemke,* ante, pp. 142, *et seq.* The plaintiffs in error filed a motion for a rehearing, which the court decided at its session in February, 1889, and then filed the opinion, *infra.*

*Thomas P. Fenlon,* and *Warner, Deane & Hagerman,* for plaintiffs in error.

*L. B. & S. E. Wheat,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Two of the grounds upon which this application for a rehearing is based, depend upon written and oral testimony which was offered on the trial. Upon a reëxamination of the record it is found that these questions are not before the court and cannot be considered, for the reason that it does not appear that all of the testimony is included in the record.

The third ground is based upon what is apparent upon the face of the pleadings, and was not before considered, but is now pressed upon our attention. It is that the bond upon which the action was brought is the obligation of the officers, and not of the corporation for which they were acting. It is contended that the bond required by the statute, and the one that was given, is an official bond, and only continued in force during the term of office; and that as it appears upon the face of the bond that the terms of office expired on July 8, 1885, and as the insured did not die until the following October, no liability arises on the bond. It appears from the pleadings

that the Kaw Life Association was in existence prior to the enactment of the statute providing for the organization and control of mutual life insurance companies, which was approved March 7, 1885. (Laws of 1885, ch. 131.) By the terms of that act it was made applicable to such associations or corporations as were already organized and admitted into the state to transact life or accident business on the assessment plan. Following the requirements of the act, the officers of this association filed a bond in the sum of $50,000, executed by themselves and sureties, with the superintendent of insurance, on April 25, 1885. Upon the face of the bond it is shown that the officers were elected annually, and that the official year of the association ended on July 8th. The petition shows that the decease of Lemke occurred October 5, 1885, about three months after the expiration of the official year within which the bond was given. It will be conceded that if the bond is an official and an annual one, the obligors are only bound for the defaults that occurred during the year for which the bond was given. The contract of a surety is favorably regarded by the law, and even in cases where the officer is authorized to hold over his term and until his successor is elected and qualified, the liability on the official bond is not extended beyond the duration of the term. When an officer is chosen for a term of limited duration and a bond for the faithful performance of duties is given, the presumption is that the obligors or sureties only contract for the faithfulness of the officer during that time, and the obligation of the sureties is not extended by the mere fact that such officer is reelected or for any reason holds over the term. (*Riddel v. School Dist.*, 15 Kas. 168; *Monger v. Comm'rs of Harvey Co.*, 22 id. 318; *Johns v. Hastings*, 22 id. 464; *Comm'rs of Rice Co. v. Lawrence*, 23 id. 283; *Welch v. Seymour*, 28 Conn. 387; *Mayor v. Horn*, 2 Harr. 190; *City Council of Montgomery v. Hughes*, 65 Ala. 201; *Chelmsford v. Demarest*, 73 Mass. 1; *Rany v. The Governor*, 4 Blackf. 2; *Wapello v. Bigham*, 10 Iowa, 39; Murfree on Official Bonds, § 620, *et seq.*)

Whether the bond in the present case is an official bond,

limited in duration to the term of the officer, is to be gathered from the language employed in the instrument and the statute under which it was given. The first two sections of the act under which the bond was given, provide for the incorporation of mutual life insurance associations; and §3 provides that the persons named in the articles of incorporation shall be the directors for the first year, and they are to complete their organization by electing a president and vice-president from among their number, and a secretary and treasurer. The directors and officers are required to be elected annually; and §4 provides that after each annual election the directors are to take their oaths of office and forward the same, together with the names of the officers elected by them, to the superintendent of insurance, to be filed in his office. Provision is made in §5 for the giving of the bond, in the following manner:

"The officers of each such association having custody of the papers or funds thereof shall enter into bonds to the state of Kansas, for the benefit of the party interested, in the sum of fifty thousand dollars, with three or more sureties, to be approved by the superintendent of insurance, conditioned for the faithful accounting for and proper payment and disbursement to the legitimate purposes of the association, of all the moneys thereof which come into their hands, and for the faithful performance of all contracts made with its certificate or policyholders. Said bond shall be examined as to its sufficiency by the superintendent of insurance, and shall be renewed whenever he shall require, and with his approval indorsed thereon shall be filed with the treasurer of state."

The bond sued on substantially corresponds with the provisions of the statute. It purports to be given by the officers as principals, and the others as sureties, and it recites that the year for which the officers were elected expires on July 8, 1885. Although the statute is somewhat ambiguous, it requires in terms that the bond shall be given by the officers having the custody of the papers, and the condition is that these officers will faithfully account for and disburse the money coming into their hands to the legitimate purposes of

the association. They further promise a "faithful performance of all contracts made with its certificate or policyholders." It is quite clear from the language used that the bond

Bond, official, not corporate.

required and the one given is an official and not a corporation bond. The promise is made for the officers, and not for the association. It is that they will faithfully perform what is required of them during their incumbency of the offices to which they were chosen. There is no provision that the company shall make or furnish a bond as is provided in other cases where companies or corporations are required to give a bond. These insurance companies are organized on the mutual plan, and derive their funds from the assessments made upon their members when a death occurs. The assessments are to be made and the moneys thereby obtained are to be disbursed by the officers "having custody of the papers or funds" of the association. The legislature has seen fit to require a bond from these officers for a faithful performance of their duty under the law, and the contracts made with the members, instead of requiring a bond to be given by the association, and thus holding all the members liable for the defaults of those in office. Some doubt is thrown on the construction of the statute by providing in addition for the faithful performance of the contracts made with the certificate or policyholders; but as the bond is given by the officers and the promise is made for them, the manifest meaning is that they were to faithfully perform the contracts of the association while they were intrusted with the control of its business — that is, during their terms of office. At each annual meeting officers are chosen who are required to give a bond, and it would be an unreasonable interpretation which would require officers to be responsible for the derelictions or defaults of those who succeed them. Taking the provisions of the act together, the reasonable construction is, that the officers will faithfully discharge their duties and perform the contracts of the association during the term for which they were elected. In this way a bond is annually furnished, and a renewal may be required within the year whenever the

superintendent of insurance upon examination of its sufficiency determines that a new bond is required. With a careful supervision by the superintendent of insurance, the official bond annually furnished, and renewed whenever it is found to be insufficient, affords protection to the policyholders. It follows from what has been said and the authorities cited, that the bond upon which the action was brought is limited in its duration to the duration of the term of the officers who gave it, and that it does not cover the liability in favor of the defendant in error, which did not arise for several months after the expiration of the official year for which the bond was given.

Extent of liability.

The ruling of the district court refusing to vacate or set aside the judgment must therefore be reversed, and the cause remanded with the direction to vacate the judgment rendered against the plaintiffs in error, who are obligors upon the bond. The judgment against the association should stand.

All the Justices concurring.