## BOARD OF EDUCATION OF CITY OF ALVA v. FULKERSON et al.

No. 8799—Opinion Filed March 18, 1919.

(179 Pac. 599.)

(Syllabus.)

1. **Officers — Action on Bond—Pleading— Evidence.**

To entitle the plaintiff to recover in an action against the sureties upon the official

bond of a public officer, it is necessary for the plaintiff to allege and to show in his petition defaults which are covered by and are included within the conditions of the bond sued on.

## 2. Schools and School Districts—Bond of Treasurer—Liability of Sureties.

F. was elected treasurer of a school/ district in April, 1908, and gave a bond with sureties, to account for funds coming into his hands during his term of office, and in April, 1909, at the next election provided by law, was re-elected to the same office, and entered upon the duties thereof on the 7th day of May thereafter, and continued in office but without giving a new bond. Held, that the sureties on the bond given upon his first election are not liable for defaults occurring after the commencement of his second term.

Error from District Court, Woods County; W. C. Crow, Judge.

Action by the Board of Education of the City of Alva against M. M Fulkerson and others. Judgment for defendants, and plaintiff brings error. Affirmed.

L. T. Wilson, C H. Mauntel, and E. W. Snoddy, for plaintiff in error.

Houston & Brooks and Arthur G. Sutton, for defendants in error.

RAINEY, J. This is an action against the sureties on the official bond of Mr. M. M. Fulkerson, given by him as treasurer of school district No. 1 of Woods county, Okla. The cause was tried to a jury, resulting in a judgment for the defendants, from which the plaintiff has appealed to this court.

The evidence in the case shows that Fulkerson was elected treasurer on the 7th day of April, 1908, and executed the bond herein sued on the 28th day of said month to the board of education of the city of Alva. Pursuant to the statutes he was re-elected in April, 1909. The misappropriations for which it is sought to hold his sureties liable occurred May 27, October 21, and December 1, 1909, which dates were subsequent to his second election.

The conditions of the bond that the principal (M. M. Fulkerson) "shall promptly pay and deliver to proper persons or officer designated by law, all money which may come into his hands by virtue of said office, and shall truly account for all the balances of money or property remaining in his official hands at the expiration of his term of office; and shall exercise all due care in the preservation and lawful disposal of money, papers, books and securities which shall come into his possession as such officer, and deliver same to his lawful successor in office,

or to any person legally authorized to receive same, then this bond and obligation to be void; otherwise to be and remain in full force and effect."

The sureties contend that they are only liable under their bond for money received and misappropriated by their principal during his first term of office, and that said term expired prior to the defalcations. The general election law in force at the time of Fulkerson's second election provided for the holding of elections in all cities of the first class on the first Tuesday in April, 1909, and each two years thereafter, at which there should be elected, among others, "one treasurer of the city school board." The law further provided that the term of the officials elected thereunder should begin the first Monday in May, following their election. Article 2, c. 16, Session Laws 1909.

The general rule is that the duration of a surety's liability on the official bond of a public officer is coextensive with such officer's tenure of office, and ceases when the term expires by operation of law. Aultman-Taylor Mach. Co. v. Burchett, Sheriff, 15 Okla. 490, 83 Pac. 719: United States v. Nicholl, 12 Wheat. 505, 6 L. Ed. 709; A. & E. Enc. Law, vol. 25, p. 725.

And it was held by this court in Aultman Taylor Mach. Co. v. Burchett, Sheriff, et al., supra, that before sureties on an official bond will be held liable the plaintiff in the action must allege and prove defaults covered by and included in the conditions of the bond sued on. There are many cases in which it is held that the liability of the sureties is limited to the defaults occurring during the term for which the officer was elected or appointed, even though the bond was general in its terms and did not expressly so provide, but where the term of the bond expressly provides for a longer term the liability of the sureties is commensurate therewith. See note in 103 Am. St. Rep. 924, to Blades v. Dewey, 136 N. C. 176, 48 S. E. 627, 1 Ann. Cas. 379. But these distinctions are not necessary to be noticed or considered in the instant case, for the reason that the bond herein involved, by its terms, provided that the treasurer should account for "all the balances of money or property remaining in his official hands at the expiration of his term of office."

It is conceded by counsel for plaintiff that the general rule is that sureties are only liable for misappropriations made by their principal during his term of office, but it is insisted that said rule is not applicable on account of the provisions of section 10, art. 23, of our Constitution, the pertinent lan-

guage of which section is as follows:

"Nor shall the term of any public official be extended beyond the period for which he was elected or appointed: Provided, that all officers within this state shall continue to perform the duties of their offices until their successors shall be duly qualified."

We understand plaintiff's position to be that under the above provision Fulkerson's first term had not expired at the time of the defalcations charged in the petition, because of the fact that he had not filed a new bond.

A few cases, like Baker City v. Murphy, 30 Or. 405, 42 Pac. 133, 35 L. R. A. 88, make an exception to the general rule that the liability of the sureties does not extend beyond the term for which they undertook to be responsible for their principal where the principal merely holds over beyond his term by virtue of his original election and qualification after the expiration of the statutory period for which he was elected, but before his successor is elected and qualified. These cases are collected in a note to the above case in 35 L. R. A. p. 88. Practically every one of these cases, however, concede that sureties upon official bonds are presumed to know the duration of the term of the principal's office and to have contracted to bind themselves only for liabilities arising during said term, and, as stated in Baker City v. Murphy, supra:

"It is only upon the application of the rule to statutory enactments governing the tenure of office that the authorities appear to part company."

It appears from an examination of the Murphy Case that one S. F. Murphy was city treasurer of the town of Baker City, and was elected for a term expiring November 6, 1893, but by the law in force in Oregon it was provided that he should hold his office "until his successor is elected and qualified," and the sureties were held on the distinct ground that Murphy's term of office did not end on the 6th day of November, 1893, as his successor had not been elected and qualified, but the Supreme Court of Oregon held that Murphy, the principal, was merely holding over and had not commenced a new term. That court recognized a clear distinction in the case before it and a case where an officer is re-elected or reappointed to the same office and commences a new term. This clearly appears from the following language from the opinion of the court by Justice Wolverton:

"Many authorities are cited by counsel for appellant, of which Chelmsford Co. v. Demarest, 7 Gray [Mass.] 1, is the leading case, in support of the contention that the sureties are not held beyond the particular term. But it will be found upon an examination of these authorities, that nearly all of them consist of cases where the incumbents have been re-elected or reappointed to the same office, and the authorities have permitted them to continue in office without again qualifying. In such a case it is the duty of the authorities to require the incumbent to requalify, and, upon his failure or refusal to comply with the requirement, to declare the office vacant, failing in which the sureties are not bound beyond the term, or, as some of the authorities say, a reasonable time thereafter. See, in this connection, Rany v. Governor, 4 Blackf. [Ind.] 5. The case is the same as if one officer succeeds another by election or appointment, and is inducted into the office without qualifying. The former term lapses, and the new one begins with an incumbent without sureties for the due and faithful observance of his duties."

The case at bar falls within the class of cases referred to in the excerpt quoted, for Fulkerson was not merely holding over, but was re-elected and had commenced a new term, although he did not file a new bond.

Section 5778, Statutes of 1893, which is practically the same as section 7796, Rev. Laws of 1910, was in force when Fulkerson was re-elected, and provided that before entering upon his duties the treasurer should take the oath of office. Section 5779, Statutes of 1893, which is identical with section 7797, Rev. Laws of 1910, and which was also in force at the same time, is as follows:

"Every person duly elected to the office of director, clerk, or treasurer of any school district who shall refuse or neglect, without sufficient cause, to qualify within twenty days after his election or appointment, or who having entered upon the duties of his office shall neglect or refuse to perform any duty required of him by the provisions of this chapter, shall thereby forfeit his right to the office to which he was elected or appointed, and the county superintendent shall thereupon appoint a suitable person in his stead."

Section 5789, Statutes of 1893, as amended by the laws of 1901 (section 7806, Rev. Laws of 1910) provides that the treasurer of a school district shall execute to the district a bond in double the amount of money, as near as it can be ascertained, to come into his hands as treasurer during each year, with sufficient sureties, but the law did not provide that he should execute the bond before entering upon the duties of his office. Under section 7797, supra, if the treasurer fails to perform any of the duties of his office, and certainly the execution of the bond is one of his highest duties, he for-

feits the office to which he was elected or appointed. Fulkerson entered upon the duties of his office on the first Monday in May, 1909, but, having failed to execute the bond required by law, his office was subject to forfeiture, and the county superintendent could have appointed some one in his stead, but since the authorities failed to either forfeit Fulkerson's office or to require him to make and file a new bond, he became treasurer de facto of the district. Nevertheless he had entered upon his duties and was serving a new term, and not the term for which the bond herein sued on was given.

The case of Riddle et al. v. School District No. 72. 15 Kan. 168, is very much in point. In that case Mr. Justice Brewer, speaking for the court, said:

"On the 18th day of February, 1873, there being a vacancy in the office of treasurer of the school district, one W. F. Riddle was duly appointed to fill such vacancy, and qualified as such officer, among other things giving the bond sued on. On the 27th of March, 1873, at the regular annual election, the said W. F. Riddle was duly elected treasurer for the ensuing year. He took no new oath of office, and gave no new bond, but continued to act as treasurer until his death, November 10. 1873. Were the sureties on the bond responsible for moneys that passed into his hands after the election? The bond does not in terms fix any limits to the time of its running. It does not purport to be given for a year, or a month, or any other period of time. Neither does it specify the length of the term of Riddle's office. Its condition is as follows: The condition of the above obligation is such, that if the said treasurer shall faithfully discharge his duties as treasurer of said district, as prescribed by law, then this obligation to be void otherwise to be and remain in full force.' Again, the law provides that school district officers 'shall hold their respective offices until the annual meeting next following their election or appointment, and until their successors are elected and qualified.' Now do either or both of these facts render the sureties liable for default occurring subsequent to the term for which the principal was appointed? We think not. The silence of the bond as to its own duration is immaterial. The law fixes the length of the principal's term, and the obligation of the sureties extends only to the term existing, and for which the bond is given. Nor does the failure of the people to elect a successor, or of the successor elected to qualify, extend the term for which the principal was appointed. He may, it is true, be continued in office, as the statute has provided, for preventing a vacancy between the close of the one term and election and qualification of a successor; but he is simply filling a part of his successor's term. The

authorities generally coincide with the views above expressed. See Wapello v. Bigham, 10 Iowa, 39 [74 Am. Dec. 370]; Chelmsford Co. v. Demarest, 7 Gray [Mass.] 1; People v. Aikenhead, 5 Cal. 106; Mayor, etc., v. Horn, 2 Del. 190; Rany v. Governer, etc., 4 Blackf. [Ind.] 2. In the first case, the suit was on a county treasurer's bond, who by statute held until his successor was elected and qualified. Elected his own successor, he gave no new bond, and the sureties on the bond given for the first term were held not responsible for default occurring during the second. The second was the case of a bond given by the treasurer of a private corporation. He was to be chosen annually, and to hold till another was chosen and qualified. The third case is like this, in that it was the duty of another officer, on the failure of a party elected to give bond, to treat the office as vacant and appoint some one to hold. The court say, the sureties might well rely on the proper discharge by that officer of this duty. Here, if the district treasurer fails to give bond, it is made the duty of the board to appoint one who will. Gen. Stat. 923, § 37. The cases of Krutschmitt v. Houck, 6 Nev. 163, State v. Wells, 8 Nev. 105, and Thompson v. State, 37 Miss. 518, are partially against the views here expressed. But the first case the court treats as an appointment during pleasure; and in the last there was no fixed time for the commencement and close of a term, or the appointment of a successor, and the case is really not in conflict with the general current of the decisions."

This case has been followed in the same jurisdiction, and has been cited with approval in many other jurisdictions. See Kaw Life Ass'n et al. v. Jennie Lemke, 40 Kan. 661, 20 Pac. 512. To the same effect are the following cases: Richardson School Fund v. Dean, 130 Mass. 242; Welch v. Seymour, 28 Conn. 387; Bigelow v. Bridge, 8 Mass. 275; Board of Administrators v. McKowen, 48 La. Ann. 251, 19 South. 553, 55 Am. St. Rep. 275; Saving Bank v. Hunt, 72 Mo. 597, 37 Am. Rep. 449; Scott County v. Ring, 29 Minn. 401, 13 N. W. 181.

Butler v. State ex rel. McFatridge, 20 Ind. 169, and State ex rel. Jackson Tp. v. Berg et al., 50 Ind. 496, are to the contrary. The case of St. Louis Union Soc. v. Mitchell et al., 26 Mo. App. 206, is not in point, for it appears from an examination of the facts in that case that the giving of a bond was a necessary qualification to the taking of the office, and, the bond having been given, the principal had not entered upon a new term, but was merely holding over under the old term.

The two cases of Amherst Bank v. Root, 2 Metc. (Mass.) 536, and Sparks v. Farmers' Bank, 3 Del. Ch. 300, are cases involving the

liability of sureties on bonds of bank cashiers. In the first case the court distinguished the cases of public offices holding their offices for a fixed time and those of cashiers of banks who did not hold their offices for a fixed period, and in the second case the court also held that the sureties were liable because the cashier's term of office did not expire at a fixed time.

In Scott County v. Ring, supra, it is expressly held that where the statute contemplates that the office shall become vacant upon failure to qualify, an officer re-elected, who fails to qualify, vacates the office, and does not render the sureties on his old bond liable for acts after that time, and it is so held in Wapello County v. Bigham, 10 Iowa, 39, 74 Am. Dec. 370, which is a case very similar to the one under consideration. In that case the Supreme Court of Iowa held that under the statutes of that state the incumbent had no right to hold over, but that in case of neglect to qualify it was the duty of the Governor to appoint a successor, and that the words "until a successor is elected and qualified" are intended to cover the time between election and qualification, and that the time provided for a successor to prepare himself to enter upon his office is the limit of the sureties' responsibility, and that where the principal did not perform this duty there is a vacancy and there should be an appointment, and it was held that the liabilities of the sureties could not be extended over the term by the omission of this requirement.

The facts of this case clearly bring it within the general rule, and therefore the judgment of the trial court must be affirmed.

All the Justice concur.